470

In the Matter of BERT BAUMAN, Individually and as Duly Elected County Committeeman, Appellant, *v.* LOUIS FUSCO, as Chairman of the Bronx Democratic County Committee, et al., Respondents.

In the Matter of IRWIN I. BROOKS et al., Individually and as Duly Elected County Committeemen, Appellants, *v.* CHARLES A. BUCKLEY, as Chairman of the Bronx County Executive Committee, et al., Respondents.

In the Matter of GERALD P. GOLDSMITH, Individually and as Duly Elected County Committeeman, Appellant, *v.* LOUIS FUSCO, as Chairman of the Bronx Democratic County Committee, et al., Respondents.

First Department, June 30, 1964.

*Murray A. Gordon* of counsel (*George L. Santangelo* with him on the brief; *Sidney H. Rosen,* attorney), for appellants.

*Eugene L. Sugarman* of counsel (*Alfred J. Callahan* with him on the brief), for respondents.

*Per Curiam.* As of June 2, 1964 — the date of the recent primary election — and for 15 years prior thereto, the Democratic party, Bronx County, had divided the Seventh Assembly District, in that county, into two executive districts, designated as " The Seventh Executive District–East " and " The Seventh Executive District–West ". A similar division into east and west sectors existed in the Twelfth Assembly District. The male and female executive members from these districts each had a one-half vote in the executive committee. There were contests in the recent primary between opposing slates of candidates for county committee in the Seventh Executive District–West and the Twelfth Executive District–East.

The successful county committee members elected on June 2, 1964 in the Seventh Executive District–East and in the Twelfth Executive District–West, commenced proceedings — which were consolidated on appeal — to declare invalid a resolution of the Bronx County Democratic executive committee, adopted on June 8, 1964 after the primary but before the organization meeting of the newly elected county committee. That resolution purported to abolish the East and West divisions of the Seventh and Twelfth Assembly Districts and to combine the separate executive districts in each of those assembly districts, respectively, into a single executive district for each assembly district. Petitioners also sought to enjoin the holding of any combined county committee meetings in the reconstituted executive districts.

Apart from respondents' contention that the petitioners were not aggrieved parties within the meaning of section 330 of the Election Law to give them standing to maintain the proceedings, the only other question which concerns us — and which is dispositive of the three appeals — is whether the overlying Bronx County Democratic executive committee had the power, on June 8, 1964, to adopt an effective resolution combining the separate executive districts of the Seventh and Twelfth Assembly Districts.

We agree with Special Term that petitioners are aggrieved parties who could properly maintain these proceedings if for no other reason than that as persons elected members of the county committee in the primary election of June 2, 1964 they were potential candidates for membership in the forthcoming executive committee from the districts which were abolished by the June 8 resolution. The elimination of the separate districts removed the possibility of petitioners' selection as such members of the executive committee — a party position within the meaning of section 330 of the Election Law.

Moreover, the effect of the resolution of June 8, 1964 is to reduce the number of executive committee members to be selected from among the county committeemen in the Seventh and Twelfth Assembly Districts from four to two. It follows that the votes cast by each participant in the June 2 primary in the Seventh Executive District–East and the Twelfth Executive District–West and the vote of each county committeeman in those districts to be cast for executive committee member are correspondingly attenuated, and there results a *pro tanto* disenfranchisement of the voter and county committeeman.

Section 330 of the Election Law specifically directs a liberal construction in the exercise of the powers therein granted to the Supreme Court. Applying this mandate to the facts herein compels the conclusion that as potential candidates and as committeemen whose votes may be diluted by the effects of the resolution, petitioners are aggrieved parties who may seek relief under section 330.

Further, we conclude that the executive committee of the old county committee — which had been selected in 1962 — was without power to pass or adopt the challenged resolution of June 8, 1964 governing the boundaries of executive districts. Section 13 of the Election Law provides that members of a county committee "hold office until the election of their successors." Thus, with the election of a new county committee on primary day, June 2, 1964, the old county committee became *functus officio*. Despite the provisions of section 13 of the Election Law, respondents nevertheless contend that the executive committee of the old defunct county committee continued to retain viability. *Matter of Torchin* v. *Cohen* (286 N. Y. 544) holds otherwise, and, moreover, indicates that no rule of the old county committee could extend the authority of its executive committee to continue to exercise functions in substantial matters after their successors as a county committee had been elected.

Respondents urge that the rules and regulations of the Democratic party of Bronx County, adopted by the county committee

in accordance with section 15 of the Election Law provide (art. IV) that the officers of the county committee hold office until their successors are chosen or until a new committee is elected and organized. It follows, therefore, respondents argue, that the executive committee also continues to exist and may act until the new county committee is elected and organized.

We need not decide at this time to what extent, if any, an executive committee of a county committee may continue *de facto,* after the election of a new county committee and before its organization, to act upon administrative matters to bridge the time gap between primary day and the organization of the new committee. It was held in *Matter of Torchin* v. *Cohen (supra)* that such continuation did not include authority to make nominations, and it is just as clear that such attempted continuation cannot extend beyond statutory limits to include the exercise of power to change district boundaries or to reduce executive committee membership of the incoming executive committee.

What has been said hereinabove proceeds on the assumption that article VI of the rules — upon which respondents rely for authority permitting the executive committee to change the executive districts in the Seventh and Twelfth Assembly Districts in the manner attempted by the resolution of June 8, 1964 — may properly be construed as vesting such power. In point of fact, however, a reasonable reading of article VI leads to the conclusion that power to change the number of, and the boundaries of, executive districts is restricted to *new* executive districts which may be so created and the appointment of additional members of the executive committee for such *new* executive districts. Power to create additional executive districts does not import power to decrease the existing number by consolidation.

The orders should therefore be reversed on the law and the applications to invalidate the resolution of the executive committee adopted on June 8, 1964, should be granted, with costs to appellants. Settle order.

BOTEIN, P. J., BREITEL, VALENTE and EAGER, JJ., concur in *Per Curiam* opinion; STEVENS, J., concurs in result.

Orders, entered on June 15, 1964, unanimously reversed, on the law, with $20 costs and disbursements to the appellants, and the applications to invalidate the resolution of the executive committee adopted on June 8, 1964 granted.

Settle order on notice.